

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 21 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

M.S. MORGAN,                          :

    Plaintiff,                        :

NO._____                :

                            :

v.                                    :

                            :

MORGAN & MORGAN                       :

    Defendant.                        :

CIVIL ACTION
FILE

**1:23-CV-5920**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff M.S Morgan ("Morgan" or "Plaintiff") files this Complaint

against Defendant Morgan & Morgan ("Defendant") alleging violations of

the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the Fair

Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

## INTRODUCTION

1.

This is a civil rights action for retaliation in violation of Plaintiff's rights

under Section 1981.  Plaintiff is a former employee of Defendant.  Plaintiff

brings this action because Defendant subjected her to FMLA Retaliation.

After Plaintiff complained about Defendant's adverse action, Plaintiff

experienced continuous harassment, bullying and disciplinary action and subsequent criminal allegations which led to a documented hostile environment and constructive discharge via Plaintiff resignation.

## JURISDICTION AND VENUE

2.

Plaintiff's claims under Section 1981 and the FLSA present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3.

Pursuant to 28 U.S.C. § 1391, this Court is an appropriate venue for Plaintiff's claims because all of the parties reside and/or conduct business within the Northern District of Georgia and the unlawful employment practices giving rise to Plaintiff's claims occurred within the Northern District of Georgia.

## PARTIES

4.

2

Plaintiff resides in the Northern District of Georgia and is a citizen of Georgia.  Plaintiff was an employee of Defendant at all times material to this Complaint.

5.

Defendant, is a personal injury law firm located in Atlanta, Georgia.

6.

Plaintiff was employed by Defendant and worked at its Atlanta, Georgia location, where all or substantially all of the unlawful conduct giving rise to the Complaint occurred.

7.

Defendant is a covered employer and at all relevant times employed Plaintiff within the meaning of the FLSA.

8.

Defendant transacts business in the Northern District of Georgia and has an annual gross volume of business in excess of $500,000.

9.

Defendant is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process, Heather Broadwater 410 Plasters Ave NE Suite 200 Atlanta, GA 30324.

## FACTUAL ALLEGATIONS

### 10.

Plaintiff began employment with Defendant on  October 26, 2020 as a Case Manager in the Auto Personal Injury Division.

### 11.

At the end of November 2020, Plaintiff was given the opportunity to work remotely due to being the sole caretaker of her immunocompromised mother.

### 12.

In May 2021, Defendant sent a firmwide email to all staff requiring all employees return to work in office full time. Plaintiff asked if there was a way to provide additional medical documentation to support continued remote work. Plaintiff was told by Human Resources what was needed and Plaintiff provided documentation but was told her request was denied.

4

Plaintiff resumed in  office work throughout the remainder of her employment.

13.

In late October 2021, Plaintiff's mother suffered a medical emergency which caused immediate hospitalization for over 2 weeks. Plaintiff continued to work as normal even from the hospital while procedures were performed.

14.

On November 24, 2021, Plaintiff's mother passed away due to illness complications. Plaintiff notified Human Resources and began to prepare arrangements. Plaintiff utilized PTO paid and unpaid during this period.

In early December 2021, Plaintiff asked Human Resources about FMLA possibilities due to the loss causing severe and debilitating anxiety attacks. Plaintiff had numerous conversations and email exchanges about the options available. Plaintiff provided medical documentation as well as excuses and diagnosis information to Human Resources while FMLA paperwork was being completed by Plaintiff's medical team. Around December 21, 2021 Plaintiff received multiple calls from team members

5

stating the attorney announced my removal from the team during a holiday luncheon. Plaintiff was unaware she had been removed from the team and contacted Human Resources to inquire, after a brief investigation Human Resources called me back to confirm the attorney announcement took place. Plaintiff raised her concerns to Human Resources in that moment if it was retaliation due to the FMLA request. Human Resources confirmed they would investigate and assured Plaintiff it would be addressed.

15.

On January 3, 2022, Plaintiff returned to the office in person as requested by Human Resources to complete new documentation for a Leave of Absence. During the meeting, Human Resources confirmed to Plaintiff the attorney felt "blindsided" by Plaintiff's request for FMLA and let down by Plaintiff for needing additional time off. Human Resources confirmed their response to the attorney was there was no set time period to grieve the loss of a parent and approved the leave request. Plaintiff shared her concerns that attorney's conduct was retaliatory, Human Resources confirmed they would look further into the issue and sent Plaintiff home.

6

16.

Plaintiff returned to work as agreed on March 9, 2022 in the same position and classification as a salaried employee. Plaintiff floated to complete work for various teams until she was approached to work in the Premises Liability Division of the firm. Plaintiff had conversations with the Managing Partner, Human Resources and two Premises Liability attorneys. In those meetings we confirmed my direct supervisor, my duties and my title. After the meeting with the team, I had a one on one meeting with my direct supervisor of my concerns about the raise I received and how it was lower than the threshold of 1-6%. I was told to hold off on raising my concerns until things became a little more stable within the tumultuous division and revisit it at a later date.

17.

During a team meeting on May 4, 2022 there was a discussion about case allocation, distribution and case management expectations. The meeting adjourned and Plaintiff left on PTO for a few days.

18.

On May 10, in Plaintiff met  with the newly added HR Manager we discussed the  team change, possible compensation increase, the FMLA retaliation investigation and what happens next. It was in that meeting Plaintiff was told her classification would change from being salaried since October 2020 to now hourly and that her title would change to Pre Suit Paralegal.

Plaintiff stated to Human Resources in that meeting and in subsequent email exchanges she was ok with the team change, still in premises but not ok with the reclassification and title change. Plaintiff was told by HR she would look into it and follow up by Friday of that week. They all were aware Plaintiff was going to be out of the country and when Plaintiff checked her email, she was told the change was official. Plaintiff and Human Resources exchanged a few emails due to Plaintiff's questions not being answered. Plaintiff returned to work May 16, to discover her classification changed.

19.

As Plaintiff was settling into the changes that had taken place, along with allocated cases changing - a settlement offer was extended on or around June 8th for a case Plaintiff had just lost to reallocation. Plaintiff had worked the entire case and even negotiated settlement terms when case was assigned to a different paralegal. On June 9th, 2022, Plaintiff sent an email to a few partners and the attorney who agreed to the settlement to ensure she would get the credit and to ask next steps. Plaintiff received a couple of emails from one out of the four attorneys who stated it was to be determined. Following up a few days later, Plaintiff met with the Managing Partner to discuss the case credit and bonus, within that conversation the Managing Partner reviewed the case file and told Plaintiff she would indeed receive the case credit and bonus due to the work completed by Plaintiff. Plaintiff also discussed the possibility of a pay increase inquiry and provided the Managing Partner with supporting documentation for raise consideration. The Managing Partner stated he couldn't promise anything but would submit it all for consideration. The same day Plaintiff was approached by Human Resources about coworkers within Plaintiff's office vaping. Plaintiff stated she knew coworkers had

9

vapes but knew nothing else. Human Resources sent a email late that afternoon about the policy of not smoking in the office.

20.

On the afternoon of June 9, 2022 while Plaintiff was starting to wrap up the work day, Human Resources entered the office and caught two coworkers smoking their vape pens. Plaintiff excused herself and went to the ladies room. Upon returning only one of the coworkers was still in the office. The coworker confronted Plaintiff and asked if Plaintiff had complained of vaping. Plaintiff denied and continued to wrap up the work day. The coworker was hysterical and accused Plaintiff of getting the other coworker fired and she left the office for the day. About 20-30 minutes later, Plaintiff received an email from Human Resources to come down to the office.

21.

As Plaintiff entered into the Human Resources office and closed the door, Human Resources stated they received a serious complaint about Plaintiff. Human Resources stated to Plaintiff they received a complaint

10

that Plaintiff was having illegal drugs delivered to the company premises

and distributing and selling those drugs to employees. Human Resources

stated they had serious concerns and would open an investigation into the

complaint. Human Resources stated during the course of the investigation,

they would be interviewing various attorneys and support staff to

determine if in fact Plaintiff was receiving deliveries and distributing drugs

through the office. Plaintiff became upset at the accusation, immediately

refuted the allegations and offered to complete a drug test immediately to

refute the claims. Plaintiff asked for information on who raised the

complaint and when, Human Resources declined to answer and stated

they would fully investigate. Plaintiff asked if she could return to work,

Human Resources confirmed Plaintiff could continue to work while claim

was being investigated. Plaintiff left the office for the evening as as Plaintiff

attempted to drive home suffered a debilitating anxiety attack while on the

highway. Plaintiff immediately contacted her doctor and was given an

excuse to not work for the next few days in which Plaintiff provided to

Human Resources. The return to work was for June 14, 2022.

22.

On June 10, 2022 Plaintiff sent an email to Human Resources expressing concerns about sharing the office with the angry coworker and asked for a move to avoid a hostile work environment. Plaintiff also learned of Human Resources searching the desks of a few employees and interviews of those employees. Plaintiff asked for an update on the investigation and asked to review the complaint and was told the investigation had been completed and closed.

23.

On June 14, 2022 Plaintiff returned to the office and met with Human Resources to provide a jury duty summons. During the conversation Human Resources asked how things were going with the coworker and Plaintiff explained a few unpleasant things that were said and done and asked again if a move could take place. Human Resources confirmed they could see how "intense" things could be but was sure it would "blow over". Plaintiff reminded Human Resources of the emotional distress this issue had caused in addition to the severe anxiety attacks and was told by Human Resources "things are out of my hands."

24.

12

While working to close out some settled cases, Plaintiff emailed the Managing Partner and Attorney asking if there was anything she needed to do to complete the closing process for the case settlement she was due to be credited for.  The attorney came into Plaintiff's office and stated she was offended because Plaintiff was making her "look like an asshole who doesn't keep her word" regarding the bonus. Plaintiff explained and showed the attorney her metrics dashboard and why it was important to Plaintiff to verify what was left to complete. The attorney began to raise her voice, demanding Plaintiff stop including partners on the email exchanges. Plaintiff confirmed her understanding, apologized asked the attorney to stop yelling. When attorney continued to rant, Plaintiff left the office to deescalate the situation.

25.

The following day, Plaintiff received an email advising she would not receive case credit nor firm bonus and would only receive a bonus at the attorney's discretion. Plaintiff although upset, confirmed understanding.

26.

13

On June 27, Plaintiff complained to Human Resources about continued harassment and berating from former attorney. After exchanging a few emails with her former attorney & team, Plaintiff received an email from Human Resources stating Plaintiff had violated a Code of Conduct policy and was receiving a first and final written warning for insubordination. Included with a copy of the write up included instructions not to communicate with any of my former teammates and support staff or it would lead to immediate termination from the company. Plaintiff confirmed understanding although disagreeing, expressed concerns to Human Resources and finished the work day.

Plaintiff continued to endure harassment from former attorney and raised the issue with new supervisor and was told there was nothing he could do and to just power through.

27.

After Plaintiff engaged in protected conduct, Defendant failed to provide proper remedy to Plaintiff's complaints of bullying, harassment, retaliation and hostile behavior and conduct of other employees.

28.

14

Plaintiff subsequently filed a complaint with the EEOC based on all paragraphs above which led to the resignation and constructive dismissal. An EEOC mediation was ordered and failed, in which a Right To Sue Letter was issued.

## COUNT I
## RETALIATION – 42 U.S.C. § 1981

29.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

30.

Plaintiff engaged in protected activity under Section 1981 by making internal complaints to Human Resources, and Managing Partners.

31.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

32.

As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress,

inconvenience, loss of income, humiliation, and other indignities.

33.

Pursuant to Section 1981, Plaintiff is entitled to damages, including back pay, and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

## COUNT II
## FAIR LABOR STANDARDS ACT: RETALIATORY DISCRIMINATION AND DISCHARGE UNDER 29 U.S.C. § 215(a)(3))

34.

Plaintiff re-alleges and incorporates by reference all prior paragraphs of the Complaint.

35.

Plaintiff engaged in protected activity under the FLSA.

36.

Defendant's retaliatory conduct injured Plaintiff.

37.

Defendant intentionally and willfully violated the FLSA by constructively dismissing Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a)    Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for his unlawful termination, and all fringe benefits of employment, with prejudgment interest thereon;

(b)    Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(c)    Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for their conduct toward Plaintiff and deter Defendant from similar conduct in the future;

17

(d)    An award of liquidated damages for Plaintiff's lost wages suffered as a result of retaliation under the FLSA;

(e)    An award of prejudgment and post-judgment interest;

(f)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(g)    Judgment against Defendant for damages incurred by Plaintiff;

(h)    Judgment against Defendant in such an amount as willfully and adequately compensate Plaintiff; and

(i)    Other and further relief as the Court deems just and proper.

### PLAINTIFF DEMANDS A TRIAL BY JURY.

This 21th day of December, 2023.

Respectfully submitted,

s/M.S. Morgan
M.S. Morgan
msmorgan1948@gmail.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/20/2023

**To:** Melanie S. Morgan
1829 Brewer Blvd SW
Atlanta, GA 30310

Charge No: 410-2022-05302

EEOC Representative and email:   Briggette Woodard
Investigator
briggette.woodard@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2022-05302.

On behalf of the Commission,

Digitally Signed By: Darrell E. Graham
09/20/2023

Darrell E. Graham
District Director

**Cc:**
Heather Broadwater
Stanton Law LLC
410 Plasters Ave NE Ste 200
Atlanta, GA 30324

Brian Nason
Morgan & Morgan
191 Peachtree St NE Ste 4242
Atlanta, GA 30303


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 410-2022-05302 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2022-05302 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:** Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.